FILED
[illegible stamp]

2025 DEC 22  PM 2:33

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 25cr10469 |
| | Violation: |
| v. | Count One: Conspiracy to Violate the Anti-Kickback Statute (18 U.S.C. § 371) |
| DEANE GILMORE, | |
| Defendant. | Forfeiture Allegation: (18 U.S.C. § 982(a)(7)) |

## INFORMATION

At all times relevant to this Information:

### GENERAL ALLEGATIONS

1.    Defendant DEANE GILMORE ("GILMORE") was a resident of Walpole Massachusetts.

2.    GILMORE was the owner, manager, and operator of Jupiter Medical Associates Inc. ("Jupiter") and Granite Medical Associates Inc. ("Granite").

3.    Jupiter and Granite were Massachusetts corporations based in Norwood, Massachusetts. Both were purportedly suppliers of durable medical equipment ("DME"), such as orthotic braces.

4.    Beginning in or around September 2019 and continuing into at least April 2022, GILMORE owned and operated Jupiter.

5.    Beginning in or around April 2020 and continuing into at least April 2022, GILMORE beneficially owned and operated Granite. However, on paper, GILMORE made it appear that a relative ("Relative 1") owned Granite.

*The Medicare Program*

6.     The Medicare Program ("Medicare") was a federally funded health insurance program affecting commerce that provided health care benefits to persons who were 65 years of age and older or disabled. The benefits available under Medicare were governed by federal statutes and regulations.

7.     Medicare was a "health care benefit program" as defined by 18 U.S.C. § 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

8.     The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

9.     Individuals who qualified for Medicare benefits were commonly referred to as "beneficiaries." Each beneficiary was given a unique Medicare identification number.

10.     Medicare included coverage under component parts. Medicare Part B covered, among other things, physician services, outpatient care, and DME.

11.     Health care providers that provided services to Medicare beneficiaries, including durable medical equipment suppliers and pharmacies, were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number could take steps to enroll in Medicare and, once enrolled, would be able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

12.     In becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims. To participate as a Medicare provider and receive Medicare funds, enrolled

2

providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

13.     Upon certification, the medical provider was assigned a provider identification number for Medicare billing purposes (referred to as an "NPI"). When the medical provider provided a good or rendered a service, the provider submitted or caused the submission of a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that medical provider.

14.     To receive reimbursement for a covered good or service from Medicare, a provider was required to submit a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, patient, and good or services rendered.

15.     Under the Social Security Act, for any item or service to be covered by Medicare, it must have (1) been eligible for a defined Medicare benefit category, (2) been reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, and (3) met all other applicable Medicare statutory and regulatory requirements. *See* 42 U.S.C. § 1395.

*Durable Medical Equipment*

16.     DME was reusable medical equipment such as orthotic devices, walkers, canes, and hospital beds. Orthotic devices were a type of DME that included knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

3

17.     Medicare reimbursed DME providers for medically necessary items and services rendered to beneficiaries. In claims submitted to Medicare for the reimbursement of DME, providers were required to set forth, among other information, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and provider number of the provider who prescribed or ordered the equipment.

18.     Medicare would pay claims for the provision of DME only if the equipment was ordered by a licensed provider, was reasonable and medically necessary for the treatment of a diagnosed and covered condition, and was provided to a beneficiary.

19.     Medicare claims were required to be properly documented in accordance with Medicare rules and regulations.

### The Federal Anti-Kickback Statute

20.     To enroll as a Medicare provider, Medicare required providers to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions, including the Federal Anti-Kickback Statute. Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

### Overview of the Conspiracy to Pay and Receive Kickbacks

21.     From in or about March 2020 and continuing to in or about April 2022, GILMORE and others known and unknown to the United States conspired to offer, pay, solicit, and receive, and did offer, pay, solicit, and receive kickbacks by: using telemarketers or call centers to obtain

4

medical information from or about Medicare beneficiaries; using that information to prepare medical documentation, including orders, for DME—namely off-the-shelf orthotic (*e.g.*, knee, back, ankle, wrist) braces—for Medicare beneficiaries that made it appear that medical practitioners were legitimately prescribing the DME to these beneficiaries; submitting claims to Medicare for orders for DME, and paying the telemarketers per order approved by Medicare. These orders were medically unnecessary, based on false documentation, tainted by kickbacks and bribes, and otherwise not covered by Medicare. Medicare would have denied these claims had it known the process by which these claims were generated.

22.    GILMORE, through Jupiter and Granite, submitted or caused to be submitted a total of approximately $6.5 million in kickback-tainted claims to Medicare, for which Medicare paid approximately $2.3 million.

### Object and Purpose of the Conspiracy to Pay and Receive Kickbacks

23.    The object of the conspiracy was for GILMORE and others known and unknown to obtain payment from Medicare for claims for DME that were tainted by kickbacks and bribes, medically unnecessary, based on false documentation, and that Medicare otherwise would not have reimbursed. The principal purpose of the conspiracy was to offer, pay, solicit, and receive kickbacks and bribes designed and intended to generate orders and medical records for DME (collectively "orders") without regard to medical necessity, accuracy, and/or whether the orders were eligible for reimbursement, to enrich themselves and others, known and unknown.

### Manner and Means of the Conspiracy to Pay and Receive Kickbacks

24.    The manner and means by which GILMORE and coconspirators known and unknown, carried out the conspiracy to pay and receive kickbacks were the following:

a. Offering, agreeing to pay, and paying kickbacks and bribes to marketers to obtain orders for DME that were not medically necessary and not eligible for Medicare reimbursement;

b. Concealing his ownership of Granite by using Relative 1's name to make Relative 1 appear as the owner on, among other records, Granite's entity registration paperwork, Medicare enrollment records, and documents submitted to an accreditation company;

c. Hiding kickbacks by creating false invoices which appeared to require Jupiter and Granite to pay the marketers on a flat fee or hourly rate;

d. Submitting orders for DME which were purportedly signed by doctors or other providers who, in fact, had no treating relationship with the beneficiary;

e. Submitting false and fraudulent claims to Medicare for DME orders that were (a) induced through kickbacks, bribes, and other illicit incentives; (b) designed for maximum reimbursement and regardless of medical need; (c) not medically necessary; (d) not eligible for reimbursement; and (e) not properly prescribed by a medical practitioner; and

f. Diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

<u>Overt Acts in Furtherance of the Kickback Conspiracy</u>

25.    GILMORE and co-conspirators known and unknown committed the following acts, among others, in furtherance of the conspiracy:

a. On or about December 1, 2020, GILMORE sent a wire transfer of $22,500 from Granite's TD Bank account ending in x0185 to an account held by Jackson Media, Inc.,

a marketing company who provided signed doctor's orders to Granite and Jupiter, for

doctor's orders for orthotic braces for 50 beneficiaries at $450 per order.

b.  On or about May 18, 2021, GILMORE exchanged messages over WhatsApp with an

individual at a second marketing company.   In those text messages, GILMORE agreed

to purchase signed, payable doctor's orders for orthotic braces for 30 beneficiaries at

$550 per order, for a total of $16,500.

<u>COUNT ONE</u>
Conspiracy to Pay and Receive Kickbacks
(18 U.S.C. § 371)

The United States Attorney charges that:

26.     The United States re-alleges and incorporates by reference paragraphs 1-25.

27.     From in or about at least March 2020 to at least in or about April 2022, in the District of Massachusetts and elsewhere, the defendant,

DEANE GILMORE,

conspired with others known and unknown to the United States to commit an offense against the United States, that is, to knowingly and willfully offer and pay remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks, to induce the referral of patients for items and services, for which payment may be made in whole and in part by a federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b).

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(7))

The United States Attorney further alleges:

28.      Upon conviction of the offense in violation of Title 18, United States Code, Sections 371, set forth in Count One, the defendant,

### DEANE GILMORE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. The property to be forfeited includes, but is not limited to, the following:

    a.  $2,313,864.39 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

29.      If any of the property described in Paragraph 28, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(7), as a result of any act or omission of the defendant—

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 28 above.

All pursuant to Title 18, United States Code, Section 982(a)(7).


                                          LEAH B. FOLEY
                                          United States Attorney

                                  By:     */s/ Christopher Looney*
                                          CHRISTOPHER LOONEY
                                          Assistant U.S. Attorney

Date: December 22, 2025